# United States Court of Appeals
## For the First Circuit

No. 04-1409

UNITED STATES OF AMERICA,

Appellee,

v.

LUIS SEPÚLVEDA-CONTRERAS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Salvador E. Casellas, U.S. District Judge]

Before

Boudin, Chief Judge,
Torruella and Dyk,[*] Circuit Judges.

Anita Hill-Adames, on brief for appellant.
Mariana E. Bauzá-Almonte, Assistant United States Attorney,
H.S. García, United States Attorney, and Nelson Pérez-Sosa,
Assistant United States Attorney, Senior Appellate Attorney, on
brief for appellee.

October 25, 2006

---

[*] Of the Federal Circuit, sitting by designation.

**TORRUELLA**, **Circuit Judge**.   On September 17, 2003, Defendant-Appellant Luis Sepúlveda-Contreras ("Sepúlveda") pled guilty to a charge of carjacking under 18 U.S.C. §§ 2 and 2119(2). Sepúlveda was later sentenced to 235 months in prison and five years of supervised release.  He now appeals, arguing that: (1) the district court violated his right to be present at sentencing by imposing certain conditions of supervised release for the first time in the written judgment without announcing them orally at sentencing; and (2) the district court improperly delegated to the probation officer the responsibility for determining the number of drug tests he must undergo while on supervised release.  After careful review, we vacate the aforementioned supervised release conditions and remand for re-sentencing consistent with this opinion.

## I.  Background

On September 23, 2002, Sepúlveda and his co-defendant, Frankie Torres-Colón,[1] were walking, accompanied by a small child, in Río Piedras, Puerto Rico, when they saw a man driving a blue Dodge Intrepid pull into a school parking lot.  The two defendants approached the driver after he exited his car, threatened him with knives, and demanded his car keys.  The victim initially complied, but when the defendants insisted that he get into the car with

---

[1]  Torres-Colón is not a party to this appeal.

-2-

them, he refused and a struggle ensued, during which one or both defendants stabbed him. The defendants then stole the car.

On February 13, 2004, the district court sentenced Sepúlveda to 235 months in prison -- which represented the upper limit of the applicable Guideline range -- and a five-year term of supervised release.[2] The court based its decision to sentence Sepúlveda to the upper limit of the applicable range on several factors, including: (1) that Sepúlveda had "been previously involved and convicted of criminal charges at the state level which clearly shows that [he] has no respect for the criminal justice system"; (2) that Sepúlveda, who was given an electronic monitoring bracelet as part of supervised release from state prison on an unrelated conviction, was wearing the bracelet when he committed the carjacking; (3) that the carjacking resulted in permanent and life threatening bodily injury and also put a minor at risk; and (4) the court's belief that "imposing a stiff sentence will be a step towards returning control of the communit[y] to its residents." The court also stated that "[t]he terms and conditions [of the supervised release] shall be set forth in the [written] judgment." The court decided not to impose a fine -- although it

---

[2] Sepúlveda's Presentence Report ("PSR") identified him as a career offender and set his Base Offense Level at 34. It then gave him a three-level deduction for acceptance of responsibility, resulting in a Total Offense Level at 31. Combined with a Criminal History Category of VI due to his career offender status, the applicable Guideline range was 188-235 months in prison.

could have imposed a fine ranging from $17,500 to $175,000 -- due to Sepúlveda's financial condition.

The written judgment was entered on February 17, 2004. The judgment contained thirteen conditions denominated as "standard" by the Guidelines and several conditions denominated as "mandatory" by the Guidelines. See U.S.S.G. § 5D1.3. The judgment also included three conditions that are the subject of this appeal. First, the judgment stated that "[t]he defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter <u>as required by the Probation Officer</u>." (emphasis added). The judgment included two additional conditions:

> 1. The defendant shall provide the U.S. Probation Officer access to any financial information upon request, and shall produce evidence to the U.S. Probation office to the effect that income tax returns have been duly filed with the Commonwealth of Puerto Rico Department of Treasury as required by law.

> 2. The defendant shall submit his person, residence, office or vehicle to a search, conducted by a United States Probation Officer at a reasonable time and in a reasonable manner, based upon reasonable suspicion of contraband or evidence of a violation of a condition of release; failure to submit to a search may be grounds for revocation; the defendant shall warn any other residents that the premises may be subject to searches pursuant to this condition.[3]

---

[3] We will refer to these conditions as the "financial disclosure condition" and the "search condition."

After filing this appeal, on February 18, 2004, Sepúlveda's counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), requesting to withdraw. We rejected this request and ordered counsel to file a merits brief addressing: (1) whether the district court violated Sepúlveda's right to be present at sentencing by imposing the two non-mandatory, non-standard conditions in the written judgment without first announcing them at oral argument; and (2) whether the district court improperly delegated to the probation officer the responsibility for determining the number of drug tests Sepúlveda must undergo while on supervised release.

## II. Discussion

### A. Non-Mandatory, Non-Standard Conditions

Sepúlveda first argues that the district court violated his right to be present at sentencing by imposing the financial disclosure and search condition for the first time in the written judgment without orally announcing them at sentencing.

We begin by noting that "[d]efendants have a right, guaranteed by the United States Constitution and the Federal Rules of Criminal Procedure, to be present during sentencing." Meléndez-Santana v. United States, 353 F.3d 93, 99 (1st Cir. 2003), overruled, in part, on other grounds by United States v. Padilla, 415 F.3d 211, 215 (1st Cir. 2005). Accordingly, "where the conditions of supervised release announced at the sentencing

hearing conflict in a material way with the conditions of supervised release in the written sentencing order, the oral conditions control." Id. at 100. In Meléndez-Santana, we found that a district court's imposition of a drug treatment condition for the first time in the written judgment violated the defendant's right to be present because it "imposed a potentially significant new burden on the Defendant." Id.

However, we have stated that "no material conflict exists where the defendant is on notice that he is subject to the terms included in the written judgment." United States v. Ortiz-Torres, 449 F.3d 61, 74 (1st Cir. 2006). In determining whether Sepúlveda had notice of the two conditions imposed in the written judgment, we must first consider the type of condition. The Sentencing Guidelines specify different categories of conditions for supervised release: (1) "mandatory" conditions, U.S.S.G. § 5D1.3 (a); (2) "standard" conditions, id. § 5D1.3(c); (3) "special" conditions, which become "recommended" if certain criteria are met and "may otherwise be appropriate in particular cases," id. § 5D1.3 (d); (4) "special" conditions that "may be appropriate on a case-by-case basis, id. § 5D1.3(e); and (5) other conditions that meet certain criteria, id. § 5D1.3(b). Defendants are deemed to be on constructive notice for mandatory and standard conditions announced for the first time in a written judgment, and therefore have no right-to-be-present claim with respect to any such condition. See

-6-

United States v. Vega-Ortiz, 425 F.3d 20, 22-23 (1st Cir. 2005) (mandatory conditions); United States v. Tulloch, 380 F.3d 8, 13-14 & n.8 (1st Cir. 2004) (per curiam) (standard conditions).

We also note that at least two other circuits have held that defendants have constructive notice for "special" conditions that become "recommended" when certain criteria are met. See, e.g., United States v. Torres-Aguilar, 352 F.3d 934, 937 (5th Cir. 2003); United States v. Asunción-Pimental, 290 F.3d 91, 94 (2d Cir. 2002) (stating that, where specific factors necessary to make "special" conditions "recommended" are present, "these 'special' conditions are no different in practical terms from 'standard' conditions, that is, they are generally recommended"). But see United States v. Thomas, 299 F.3d 150, 155 (2d Cir. 2002) (holding that conditions announced for the first time in a written judgment that "govern more than the basic administration" of supervised release violate a defendant's right to be present at sentencing).

The financial disclosure condition imposed by the district court is a "special" condition that becomes "recommended" if "the court imposes an order of restitution, forfeiture, or notice to victims, or orders the defendant to pay a fine." U.S.S.G. § 5D1.3(d)(3). However, although the district court could have imposed a fine or restitution order on Sepúlveda, it chose not to. Therefore, the condition did not become a "recommended" condition. The search condition is not specifically enumerated in

any of the conditions listed in § 5D1.3; instead, it falls under the "catch-all" provision found in § 5D1.3(b), and is therefore not a "recommended" condition. In sum, both of the conditions imposed by the district court are non-mandatory, non-standard, and non-recommended conditions of supervised release.

To our knowledge, no circuit has upheld the imposition of such conditions for the first time in a written judgment in the face of a right-to-be-present claim. We decline to do so here. From our review of the record, there is nothing that would have served to put Sepúlveda on constructive notice that the two conditions would be imposed for the first time in the written judgment. Furthermore, the imposition of both conditions could potentially impose a significant burden on Sepúlveda. We therefore find that the district court erred in imposing these two conditions for the first time in the written judgment.[4]

Having concluded that the district court committed error, we must now address whether we review for harmless or plain error. Sepúlveda argues that he did not have an opportunity to object to the conditions at sentencing, and that our review is therefore for

---

[4] The government argues that Sepúlveda has waived any argument regarding the search condition because he "mentioned", but did not "discuss[]" the condition. We disagree. While Sepúlveda focuses much of his argument on the financial disclosure condition, he mentions the search condition and his brief clearly challenges it. This is not a situation where we are forced to piece together Sepúlveda's argument for him, see United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990), and we therefore find no waiver.

harmless error.  The government argues that Sepúlveda forfeited his right to object and that our review is thus for plain error.  We agree with Sepúlveda.

Right-to-be-present claims are subject to harmless error analysis if the defendant had no opportunity to object before the conditions were imposed.  See Ortiz-Torres, 449 F.3d at 74 (citing Meléndez-Santana, 353 F.3d at 108).  Here, since the conditions were announced for the first time in the written judgment, Sepúlveda had no opportunity to object to their imposition.

The government makes two arguments for plain error.  First, it notes that the district court stated at sentencing that "the terms and conditions [of supervised release] shall be set forth in the judgment."  According to the government, Sepúlveda should have objected to having the terms and conditions set forth in the written judgment.  We disagree.  As our discussion above illustrates, because these were special, non-mandatory and non-recommended conditions, Sepúlveda did not have constructive notice that they would be imposed in the written judgment.  We see no reason for holding that Sepúlveda forfeited objections to conditions he had no reason to anticipate.

Second, the government argues that Sepúlveda forfeited the argument by not filing any objections once the written judgment was entered.  We note that it is theoretically possible for a defendant to object to a previously unannounced written condition

after judgment is entered. See, e.g., Fed. R. Crim. P. 35(a) ("Within 7 days after sentencing, the court may correct a sentence that resulted from arithmetical, technical, or other clear error."). However, given the context of this case, there are several reasons why we are not inclined to find that Sepúlveda should have objected after judgment was entered.

First, we have stated that, in the sentencing context, "a post-sentence objection is not necessarily required to preserve the issue for appeal if the defendant could not reasonably have anticipated the issue would arise until after the court ruled." United States v. Cortés-Claudio, 312 F.3d 17, 24 (1st Cir. 2002) (citing United States v. Gallant, 306 F.3d 1181, 1188-89 (1st Cir. 2002)). As we have already discussed, Sepúlveda could not have reasonably anticipated the imposition of these conditions. Second, we have also noted that "[t]here is . . . a need for finality and few trial judges would warm to a rule which requires continued argument after the court gives its sentence." Gallant, 306 F.3d at 1188-89.[5] Finally, "unlike other areas, there is no Federal Rule of Criminal Procedure giving advance notice to counsel of a requirement to make post-sentence objections." Id. at 1189. It would be unwise to encourage a practice of entering objections after the written judgment has entered, for doing so would

---

[5]  While Gallant presented a different factual scenario than the instant case, the policy concerns expressed in that opinion apply with full force to this case.

undermine the interest in finality.  For these reasons, we reject the government's argument that Sepúlveda forfeited the argument by not objecting after the written judgment was entered.  We will therefore review the imposition of the two conditions for harmless error.

Under the harmless error standard of review, the burden is on the government to prove that the error in question is harmless.  United States v. Vázquez-Rivera, 407 F.3d 476, 489 (1st Cir. 2005).  "The standard of proof, however, depends on whether the error is conceived of as constitutional." Id.  If the error is constitutional in nature, "the government has the burden of proving beyond a reasonable doubt that the error did not affect the defendant's substantial rights."  Id.  If the error is not constitutional in nature, "the government has the burden of demonstrating the absence of any grave doubt" regarding the harmlessness of the error. See id.

Here, the government has the burden of proving beyond a reasonable doubt that the violation of Sepúlveda's constitutional right to be present at his sentencing did not compromise his ability to object to the sentencing conditions imposed by the district court.  To meet this burden, the government would need to show, beyond a reasonable doubt, that the special conditions would have been imposed even if Sepúlveda had been present.  It has

failed to do so.  We therefore vacate the financial disclosure and search conditions in Sepúlveda's sentence.

### B.  Improper Delegation

The written judgment stated that Sepúlveda "shall submit to one drug test within 15 days of release from imprisonment and at least two periodic tests thereafter <u>as required by the Probation Officer</u>."  (emphasis added).  Both Sepúlveda and the government acknowledge that, under our precedent, the district court improperly delegated to the probation officer the authority to determine the number of drug tests Sepúlveda must undergo while on supervised release.  However, both parties erroneously assume that our review is for plain error, and that the improper delegation cannot meet this rigorous test.

In <u>Meléndez-Santana</u>, 353 F.3d at 106, we held that the plain language of 18 U.S.C. § 3583(d) "requires courts to determine the maximum number of drug tests to be performed beyond the statutory minimum of three."  Delegating this authority to another entity is improper. We also held that the improper delegation constituted plain error. Recently, in <u>Padilla</u>, 415 F.3d at 215, we overruled <u>Meléndez-Santana</u>'s holding that such improper delegation constituted plain error, although we declined to reconsider <u>Meléndez-Santana</u>'s holding that the delegation was error.  If we were reviewing for plain error, it is unlikely that Sepúlveda would be successful.

-12-

However, Sepúlveda's case is distinguishable from <u>Padilla</u> and <u>Meléndez-Santana</u> because Sepúlveda never had an opportunity to object to the wording of the drug testing condition.[6]  In both <u>Meléndez-Santana</u> and <u>Padilla</u>, the district court included the drug testing condition that contained the improper delegation in both the oral and written judgments.  By contrast, in the instant case, the district court announced the drug testing condition only in the written judgment.

We have stated that "'typically, the court of a appeals reviews a district court's imposition of a special condition of . . . supervised release' unless 'the sentencing court affords the defendant an opportunity to object to the condition but the defendant holds his tongue,' in which case review is for plain error." <u>United States</u> v. <u>Mojica-Rivera</u>, 435 F.3d 28, 35 (1st Cir. 2006) (quoting <u>United States</u> v. <u>Brown</u>, 235 F.3d 2, 3 (1st Cir. 2000)).  In <u>Mojica-Rivera</u>, the district court included a drug testing condition in the written judgment that it did not include in the oral pronouncement of the sentence.  In that case, we

---

[6]  Furthermore, the constructive notice rationale that we have applied in other cases, <u>see</u> <u>Tulloch</u>, 380 F.3d at 13, is inapplicable here.  Although drug testing is a mandatory condition under the Guidelines, the Guidelines specifically state that the number of drug tests are determined by the court, not the probation officer. <u>See</u> U.S.S.G. § 5D1.3(a)(4).  Therefore, even if Sepúlveda were on constructive notice of the drug testing condition, he cannot be held to have had constructive notice that the district court would delegate to the probation officer the authority to determine the number of drug tests he must undergo.

reviewed the imposition of the drug testing condition for abuse of discretion, see id., and we follow the same course today.  Given our determinations in Meléndez-Santana and Padilla that similar language in a district court's judgment constituted "clear and obvious error," see Padilla, 415 F.3d at 220, we herein conclude that the district court in this case abused its discretion by delegating to the probation officer the authority to determine the number of drug tests Sepúlveda must undergo while on supervised release.  We vacate the drug testing provision in Sepúlveda's sentence.

### III.  Conclusion

For the forgoing reasons, we vacate the supervised release conditions regarding financial disclosure, searches, and drug testing; and we remand for re-sentencing consistent with this opinion.

**Vacated and Remanded**.